**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**FILED**

**JUL 1 2 2023**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

**SUSAN A. WOODS**
584 North Hawkins Avenue
Akron, Ohio 44313

Plaintiff

v.

**CHILDREN'S HOSPITAL
MEDICAL CENTER OF AKRON**
c/o Christopher Gessner
One Perkins Square
Akron, Ohio 44308

Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **5 : 23  CV  1350**

Judge: **JUDGE POLSTER**

**MAG. JUDGE GREENBERG**

**COMPLAINT FOR RELIGIOUS
DISCRIMINATION UNDER
42 U.S.C. § 2000e, _et seq._**

**JURY DEMAND ENDORSED
HEREON**

Now comes Plaintiff, Susan A. Woods, and states the following as her complaint against Defendant, Children's Hospital Medical Center of Akron (aka "Akron Children's Hospital"):

**INTRODUCTION**

Defendant violated Title VII of the Civil Rights Act of 1964 as codified in 42 U.S.C. § 2000e _et seq._ ("Title VII") by failing to provide Plaintiff with required religious accommodation, by failing to engage in an interactive process to determine and provide such reasonable accommodation and by retaliating against Plaintiff for exercising her right to request such accommodation.

This suit seeks to remedy Defendant's statutory violations and discrimination against Plaintiff who requested a religious accommodation from

-1-

Defendant's mandate that she either be injected with dangerous experimental agents, created from the cells of aborted human beings, that would alter her genetic material that was created by God, or be subjected to a weekly, unreliable, experimental and potentially injurious invasive medical procedure (i.e., invasive testing for the SARS-CoV-2 virus with a nasal swab) without first receiving informed consent from Plaintiff as required by 21 U.S.C. § 360 bbb-3(e)(1)(A)(i),(ii)&(III) and the Nuremberg Code. An invasive medical procedure was mandated by Defendant as an accommodation despite the existence of readily available non-invasive testing procedures, as well as many other reasonable accommodations that would not pose an undue hardship to the defendant.

Rather than comply with its obligations under Title VII and with its own official policy to provide Plaintiff with a reasonable accommodation **after** engaging in an interactive process to determine potential reasonable accommodations, Defendant threatened to terminate Plaintiff if she did not agree either to be injected with dangerous experimental gene therapy agents or to be subjected to a weekly, unreliable, experimental and potentially injurious invasive medical testing procedure, and subsequently terminated Plaintiff for failure to do so.

As evidenced by other lawsuits brought against Defendant by numerous employees for violating their Title VII rights for requesting religious exemptions from forced medical experimentation gene therapy agents that have been falsely marketed as vaccines to the SARS-CoV-2 virus and related invasive testing procedures, Christian employees have been systematically forced to either abandon

their sincerely held religious beliefs or lose their jobs. Furthermore, once the public health emergency ended on May 11, 2023, Defendant did not reinstate the Christians whom they had purged because of their sincere religious objections to the gene therapy agents used for SARS-CoV-2 virus.

## JURISDICTION AND VENUE

1.      As these claims arise under 42 U.S.C. § 2000e *et seq.*, this Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 to adjudicate this matter. During the course of violating Plaintiff's religious rights, Defendant also willfully and blatantly violated 21 U.S.C. § 360 bbb-3(e)(1)(A)(i),(ii)&(III) and the Nuremberg Code, and U.S. courts also have jurisdiction to hear these matters. See *In re Cincinnati Radiation Litigation,* 874 F. Supp. 796 (S.D. Ohio 1995).

2.      Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

3.      Plaintiff is an American citizen, is sixty-one (61) years of age, and is a resident of the city of Akron, county of Summit, state of Ohio. Plaintiff was employed by Defendant as a Genetic Counselor/Genetic Associate continuously from September 7, 1987, until March 7, 2022. Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission and exhausted her administrative remedies prior to bringing this lawsuit. (EXHIBIT A – Notice of Right to Sue)

4.      Defendant is a pediatric acute care hospital in Northeast Ohio that

provides care to infants, children, adolescents, young adults, and some older adults. Defendant is headquartered in the city of Akron, county of Summit, state of Ohio.

### STATEMENT OF THE FACTS

5.     Plaintiff was awarded a Master of Science degree in Medical Genetics from the University of Wisconsin, Madison in 1987. Plaintiff is licensed by the state of Ohio as a Genetic Counselor. Plaintiff's employment as a Genetic Counselor/Genetic Associate with Defendant began on September 7, 1987. Plaintiff was employed full time continuously in that capacity until Defendant terminated her employment on March 7, 2022, and her salary at the time of her termination was $44.37 per hour, with full benefits. Plaintiff received all positive performance reviews during her thirty-four (34) years of employment. When Plaintiff agreed to work for Defendant there were no requirements to participate in any type of medical experimentation.

6.     On February 4, 2020, the U.S. Health and Human Services' (hereinafter HHS) Secretary declared that circumstances existed to justify the authorization of emergency use of drugs and biological products to deal with COVID-19 disease, that is believed to be caused by SARS-CoV-2 virus.

7.     On March 1, 2020, the FDA issued an emergency use authorization (hereinafter EUA) for the diagnostic test for the SARS-CoV-2 virus, i.e., polymerase chain reaction test (hereinafter PCR test), as a result of the February 4, 2020, declaration and pursuant to 21 U.S.C. § 360 bbb-3. Subsequently, many

-4-

more EUA's were issued for the PCR test manufactured by different institutions. No test to detect SARS-CoV-2 virus has ever received FDA approval.

8.     As often occurs during the experimental stage of medications and medical testing protocols, there is mounting evidence questioning the accuracy of the PCR test for SARS-CoV-2 virus, even by its inventor. Evidence of false positives and false negatives were presented to Congress on January 24, 2022. Additionally, the Centers for Disease Control and Prevention's (hereinafter CDC) guidelines no longer recommend screening testing of asymptomatic individuals with no known exposure in most community settings.

9.     There are two methods for collecting DNA samples for purposes of the PCR test, i.e.: (1) saliva collection where one spits into a container and (2) nasal swab where a medical device is placed into the nasal cavity to scrape away and collect tissue.

10.     Three gene therapy agents received EUA and were available for use in the United States as a result of the February 4, 2020, declaration and pursuant to 21 U.S.C. § 360 bbb-3: one manufactured by Pfizer-BioNTech on December 11, 2020, one manufactured by Moderna on December 18, 2020, and one manufactured by Janssen on February 27, 2021, respectively. All three of these agents clearly involve gene therapy, even according to their own patents and other pharmaceutical company documentation, but they have been marketed as vaccines. None of these agents received FDA approval; they have only received EUA.

11.     Unlike a traditional vaccine, these gene therapy agents do not confer

immunity from contracting or transmitting the SARS-CoV-2 virus and can cause a myriad of serious health problems, including death.

12.    On August 16, 2021, Defendant's Chief Executive Officer, Grace Wakulchik, announced that all employees and new hires must receive one of the aforementioned gene therapy agents or accept at least weekly testing for the SARS-CoV-2 virus. No effective date was set for the requirement (*COVID-19 Related Employment Requirements Program, version 1*).

13.    In anticipation of the experimental PCR test for the SARS-CoV-2 virus being required by Defendant as a condition of her employment, Plaintiff emailed coronavirus@akronchildrens.org on August 16, 2021, to ask if a saliva test would be available, and Plaintiff received a response on August 20, 2021, from Kathryn Mahon stating in part that at that time "the hospital's lab is only equipped to process nasal swabs for coronavirus testing," as well as from Cynthia Ott, stating in part that "We are still working on the details for testing implementation." Plaintiff responded to Cynthia Ott on August 20, 2021, stating in part that she hoped the option of saliva testing was still being investigated.

14.    On September 25, 2021, Plaintiff sent an email to CovidVaccine@akronchildrens.org asking if Defendant was working towards having the saliva test available for the SARS-CoV-2 virus, and if not, what options would be available to those opposed to weekly (or more often) invasive testing.

15.    On October 6, 2021, Defendant's Chief Executive Officer, Grace Wakulchik, notified staff of an effective date of November 1, 2021, for all employees

to either accept one of the aforementioned gene therapy agents or submit to the at least weekly testing requirement.

16.     On October 22, 2021, the office of Defendant's Chief Human Resources Officer, Rhonda Larimore, emailed staff on how to submit a medical or religious exemption specifically from the testing alternative mandate with a deadline of November 7, 2021. The email had an online link to the *COVID-19 Testing Exemption Statement*, with a completion deadline of 5:00 pm on November 7, 2021.

17.     On October 22, 2021, Plaintiff requested a religious exemption from the influenza vaccine for the following reasons:

> I am requesting a religious exemption to the influenza vaccine as a forced injection of any kind violates my sincere and deeply held religious beliefs and therefore violates the First Amendment to the U.S. Constitution and 42 U.S.C. 1983.
>
> I am a Christian who has accepted Jesus Christ as my Lord and Savior. I deeply and sincerely believe that the Holy Bible is the Holy and Infallible Word of God that was written by God's Holy Inspiration and translated into English in 1611 by God's Holy Inspiration. Through the acceptance of Jesus Christ as my Lord and Savior, I am made new, and my body is now the temple of God (1 Corinthians 3:16-17, 1 Corinthians 6:19-20, John 2:21). Therefore, it is my sincere and deeply held religious belief that no man, woman, government or entity has dominion over my body or is permitted to force me to inject a foreign substance into my body. Furthermore, it is my sincere and deeply held religious belief that God created my body wholly perfect, with its own immune system to develop naturally and not to be tampered with. I sincerely believe that it is an affront to God to suggest that something man-made is superior to what God has created.
>
> Furthermore, it is my sincere and deeply held religious belief that injecting or ingesting any substance or cells

1    developed or derived from an aborted human being,
2    whether cloned or uncloned, is absolutely prohibited by
     God.

3    18.    On November 6, 2021, Plaintiff filed a request for a religious
4
5    exemption from at least weekly invasive testing for SARS-CoV-2 as follows:

6        I am requesting a religious exemption to at least weekly
7        testing for COVID-19 for an indefinite period of time in
         lieu of COVID-19 vaccination as such testing would
8        violate my sincere and deeply held religious beliefs, as
9        detailed below, and therefore violates the First
         Amendment to the U.S. Constitution and 42 U.S.C. 1983.

10       I am a Christian who has accepted Jesus Christ as my
11       Lord and Savior. I deeply and sincerely believe that the
         Holy Bible is the Holy and Infallible word of God that was
12       written by God's Holy Inspiration and translated into
13       English in 1611 by God's Holy Inspiration. Through the
         acceptance of Jesus Christ as my Lord and Savior, I have
14       been made new, and my body is now the temple of God (1
15       Corinthians 3:16-17, 1 Corinthians 6:19-20, John 2:21).
         Therefore, it is my sincere and deeply held religious belief
16       that no man, woman, government or entity has dominion
17       over my body or is permitted to force me to submit to an
         invasive test on an at least weekly basis for an indefinite
18       period of time.

19       Furthermore, the repeated use of the nasal swabs
20       currently being used for COVID-19 testing have been
         shown to damage the nasal epithelium, which plays a
21       crucial role in the body's defense against infection, both
22       by providing a physical barrier and by helping to mount
         an immune response. In addition, it has been confirmed
23       that the swabs being used by Akron Children's Hospital
24       are sterilized with ethylene oxide, a known carcinogen.
         There have also been reports published by independent
25       laboratories that have documented the presence of
26       nanoparticles on nasal swabs being used for COVID-19
         testing, and concerns have been raised about how these
27       nanoparticles might interfere with normal cellular
28       functions. As I believe that my body is the temple of God,
         it would violate my religious beliefs to knowingly and

-8-

repeatedly choose to subject my body to a procedure that could cause harm to my body in these, and possibly additional, ways.

I have asked on more than one occasion if Akron Children's Hospital was working towards offering non-invasive testing for COVID-19, i.e., saliva testing, as this would not invoke the same religious objections that many people have, as long as it did not involve a mouth swab. However, I have been given no indication that this option is being considered. (I know that this form of testing has been used by at least one medical/scientific institution in Northeastern Ohio.)

It is also of concern to me that the CDC withdrew its request for continuation of the emergency use authorization for their COVID-19 PCR test due to the significant chance of both false positive and false negative results. Likewise, it is of concern to me that testing is not being requested of individuals who have elected to receive the COVID-19 vaccine when the CDC has confirmed that individuals who have been fully vaccinated can still contract and transmit COVID-19. As a result, it makes the option of at least weekly testing feel punitive, if not coercive.

Additionally, since Akron Children's Hospital's PCR test for COVID-19 falls under the emergency use authorization statute, it is experimental by nature. Therefore, as a condition of the emergency use authorization, I have "the option to accept or refuse administration of the product" pursuant to Subsection bbb-3(e)(1)(A)(ii)(III) of 21 U.S.C. § 360, which implements the internationally agreed legal requirement of informed consent established in the Nuremberg Code of 1947. Therefore, it is a violation of both the Nuremberg Code (see Doe #1 v. Rumsfeld, 297 F.Supp.2d 119 (D.D.C. 2003) and federal statutory law for Akron Children's Hospital to require, as a condition of employment, for me to undergo an experimental testing medical procedure.

For these reasons, I am requesting that you honor my request for a religious exemption to at least weekly testing for COVID-19 for an indefinite period of time in

> lieu of COVID-19 vaccination and that you acknowledge
> my civil rights in this matter.

19.     On November 19, 2021, the office of Defendant's Chief Human Resources Officer, Rhonda Larimore, communicated a new policy to require all employees to be injected with one of the aforementioned experimental gene therapy agents (*COVID-19 Related Employment Requirements Program, version 2*). The option of submitting a request for a medical or religious exemption through an on-line portal was discussed in this communication. Such requests were to be submitted no later than December 1, 2021. Due to the change in Defendant's *COVID-19 Related Employment Requirements Program*, decisions were not issued on previously submitted requests for religious exemption from at least weekly invasive screening for the SARS-CoV-2 virus.

20.     On December 1, 2021, Defendant granted Plaintiff's exemption from the influenza vaccine and communicated the following to Plaintiff:

> Akron Children's Hospital has reviewed and approved
> your request for exemption from our flu vaccine
> requirement for 2021. You are not required to receive the
> flu vaccine this year. This approval expires on March 31,
> 2022 but may be reevaluated prior to that date if
> circumstances change.

> To reduce the spread of the flu virus, you will be required
> to wear a face covering while working unless you are
> alone in a private office space or eating. This obligation to
> wear a face covering runs through March 31, 2022, even if
> the COVID-19 related mask policy is revised or lifted
> prior to that date.[1]

21.     On December 1, 2021, Plaintiff requested a religious exemption from

---

[1] There was no requirement in this accommodation to be periodically tested for influenza, even though such testing exists and is FDA approved.

-10-

the new requirement to be injected with one of the aforementioned experimental gene therapy agents by answering questions on Defendant's online form as set forth below:

**Request for Religious Exemption from the COVID-19 Vaccine Requirement**

I am a Christian who has accepted Jesus Christ as my Lord and Savior. I deeply and sincerely believe that the Holy Bible is the Holy and Infallible Word of God that was written by God's Holy Inspiration and translated into English in 1611 by God's Holy Inspiration. I believe that I am a sinner and that of my own accord I fall short of the Glory of God. However, I believe that Jesus Christ was given as a gift to me, and to all who accept him as their Savior, as the ultimate sacrifice for the atonement of my sins - past, present and future – and that the only way to salvation is by acceptance of this gift of redemption through Jesus Christ. I also believe in Heaven and Hell and that Satan is real. I believe that in the End Times there will be many false prophets (Matthew 7:15-20; Matthew 24:4-25). I believe that we have been given free will to either choose or reject God and that we have been given the gift of discernment through the Holy Spirit (Psalm 119:125; Proverbs 14:6; Proverbs 15:14; Proverbs 18: 15; 1 Corinthians 12: 7-11). I believe that in the End Times those who decide to reject God will accept the mark of the Beast (Revelation 13: 10-18), and I firmly, deeply and sincerely believe that the COVID-19 vaccine is the mark of the Beast.

Furthermore, through the acceptance of Jesus Christ as my Lord and Savior, I believe that I am made new, and my body is now the temple of God (1 Corinthians 3:16-17, 1 Corinthians 6:19-20, John 2:21). Therefore, it is my sincere and deeply held religious belief that no man, woman, government or entity has dominion over my body or is permitted to force me to inject a foreign substance into my body or otherwise make any medical decision for me, as I have been granted free will by God.

Additionally, I cannot/will not willingly allow introduction of mRNA into my body that overtakes my God-given genetic apparatus to produce a protein that my body was not designed by God to produce; to presume that something introduced by man could be superior to what was designed by God is abhorrent. Likewise, I cannot/will not willingly allow introduction of the spike protein into my body, as it has been associated with so many risks of significant bodily harm, and as other risks associated with this protein are yet to-be-determined.

Furthermore, it is my sincere and deeply held religious belief that knowingly injecting or ingesting any substance or cells developed or derived from an aborted human being, whether cloned or uncloned, is absolutely prohibited by God. As a result, I cannot willingly accept a vaccination that I know to have been developed through the use of aborted fetal cells.

In addition, as all of the currently available COVID-19 vaccines fall under the emergency use authorization statute, they are experimental by nature. Therefore, as a condition of the emergency use authorization, I have "the option to accept or refuse administration of the product" pursuant to Subsection bbb-3(e)(1)(A)(ii)(III) of 21 U.S.C. § 360, which implements the internationally agreed legal requirement of informed consent established in the Nuremberg Code of 1947. Therefore, it is a violation of both the Nuremberg Code (see Doe #1 v. Rumsfeld, 297 F.Supp.2d 119 (D.D.C. 2003) and federal statutory law for Akron Children's Hospital to require, as a condition of employment, for me to undergo an experimental medical procedure. (I was previously naïve in my faith and never imagined that we would see a repeat of the atrocities committed against mankind in the name of science/medicine/public health, which led to the creation of the Nuremberg Code.)

Lastly, it is well-documented that individuals who have been fully vaccinated can still become infected by and transmit the COVID-19 virus. As a result, there is no legitimate reason for any governmental body or institution to require such vaccination.

-12-

(Of interest, the federal court of appeals placed a stay on the OSHA vaccine mandate on the day it was issued: See, States of Texas, Louisiana, Mississippi, South Carolina, & Utah, et al., v. Biden et al., 5th Cir. No. 21-60845, and the Congressional Review Act has been invoked by 50 Senators to permanently overturn the OSHA vaccine mandate.  The federal court in Missouri ordered a preliminary injunction against the HHS vaccine mandate in States of Alaska, Arkansas, Iowa, Kansas, Missouri, Nebraska, New Hampshire, North Dakota, South Dakota, & Wyoming v. Biden et al., E.D. Missouri, No. 4:21-cv-01329-MTS. Additionally, requests for temporary and permanent restraining orders of the HHS vaccine mandate are pending in State of Florida v. U.S. Dept. of Health and Human Services et al., N.D. Florida, No. 3:21-cv-02722-MCR-HTC, and in States of Louisiana, Montana, Arizona, Alabama, Georgia, Idaho, Indiana, Mississippi, Oklahoma, South Carolina, Utah, West Virginia, Ohio & Kentucky v. Biden et al., N.D. Louisiana, No. 3:21-cv-02722-MCR-HTC.)

### How Long Have You Held These Beliefs

My religious beliefs are current and unwavering. They will not change.

I have believed in the Holy Trinity and that the Holy Bible is the Inspired Word of God for as long as I can remember. I believe that recent events have awakened in me gifts of the Holy Spirit, including a questioning spirit and discernment. It has been my sincere and deeply held religious belief that the COVID-19 vaccine is the mark of the Beast ever since specific details became available about the development of the vaccine in 2020. My belief has been affirmed by how the vaccine is being used on the world stage to discriminate against and persecute those who refuse to accept its mark (Revelation 13: 10-18).

### How Have Your Beliefs Impacted Other Areas of Your Life

I have never previously had cause to believe that something offered to me represented the mark of the Beast but have been aware that this would be a reality in

the End Times. I will not accept the mark of the Beast under any circumstances.

I never imagined or thought to question that aborted fetal tissue/cells might have been used in the development of other medical interventions until I filed a request for a religious exemption to the flu vaccine requirement for 2021, and in follow-up, I was asked if I had taken any of a number of medications over the past year. Although I had not taken any of them to the best of my knowledge, it made me aware that I now must investigate, to the best of my ability, whether or not any medical interventions recommended for me in the future were developed using fetal tissue/cells.

22.     On December 3, 2021, the office of Defendant's Chief Human Resources Officer, Rhonda Larimore, communicated that Plaintiff's request for a religious exemption from the requirement to be injected with one of the aforementioned experimental gene therapy agents was approved. However, the accommodation that was offered was not the same as provided for with exemption from the influenza vaccine, i.e., to wear a face covering. Rather, despite requirements set forth by law and Defendant's own *COVID-19 Related Employment Requirements Program, Version 2,* which clearly states in part that it "will engage in an interactive process to determine if a reasonable accommodation can be provided", the accommodation required Plaintiff to be subjected to a weekly, unreliable, experimental and potentially injurious invasive PCR test with a nasal swab, even though Plaintiff previously made it known that this would violate her sincerely held religious beliefs. The widely available non-invasive saliva PCR test was not offered as an accommodation, nor was any other reasonable, religiously acceptable accommodation, such as teleworking, wearing other personal protective

-14-

equipment or being reassigned to a different position.

23.    Defendant did not require employees who had received one of the aforementioned experimental gene therapy agents to undergo periodic testing for the SARS-CoV-2 virus, yet the CDC has recommended that if a screening testing program is instituted, testing decisions should not be based upon whether or not individuals have received one of the gene therapy agents, marketed as vaccines for the SARS-CoV-2 virus.

24.    Most, if not all, of the other Genetic Counselors employed by Defendant, all of whom were injected with one of the aforementioned experimental gene therapy agents, subsequently contracted a SARS-CoV-2 virus or a variant thereof and had symptoms, some of whom also had serious adverse reactions to the aforementioned experimental gene therapy agents.

25.    On December 29, 2021, Plaintiff communicated the following to Defendant's Chief Human Resources Officer, Rhonda Larimore, via email:

> I received a religious exemption from the COVID-19
> vaccine requirement and had submitted a request for a
> religious exemption from COVID-19 invasive screening on
> at least a weekly basis back in October. Will you still be
> considering requests for a religious exemption to invasive
> screening? I have not heard any more about this option.

26.    On December 29, 2021, Defendant's Chief Human Resources Officer, Rhonda Larimore, answered Plaintiff's request set forth above with the following: "We have not announced the process for testing under the exemption approval scenario at this time. More to come."

27.    On January 21, 2022, Plaintiff communicated the following to

Defendant's Chief Human Resources Officer, Rhonda Larimore, as well as to Janelle Heimburger:

> I received a religious exemption from the COVID-19 vaccination employment requirement and today received an e-mail regarding the Accommodation for COVID-19 Vaccination. I had previously submitted a request for a religious exemption from *invasive* COVID-19 screening on a weekly basis.  Will you still be considering requests for a religious exemption to *invasive screening* or making any accommodations in this regard?

28.     On January 27, 2022, Defendant's COVID Exemption Review Team answered Plaintiff's January 21, 2022, email in part with the following:

> Regardless of whether the testing requirement actually conflicts with a sincerely held religious belief, to exempt unvaccinated staff members who work onsite from the COVID-19 testing requirement would constitute an undue hardship. Your request is therefore denied.

29.     On February 1, 2022, Plaintiff communicated the following to Defendant:

> I am in receipt of your e-mail dated 1/27/2022 in regards to your denial of my request for a religious exemption from invasive screening for COVID-19. Since my religious convictions will not allow me to submit to invasive screening for COVID-19, I wanted to ask if there is an appeals process in regards to your decision. I also wanted to let you know that I am working with my department to investigate the possibility of performing my job responsibilities remotely.

30.     Defendant has all of the technologies in place to allow genetic counselors to work remotely since most of its Genetic Counselors worked remotely during the summer of 2020 due to COVID-19 fears and working remotely continues to be done by most, if not all, of Defendants Genetic Counselors at least some days

every week, as well as by other employees of the Defendant, who work in many different capacities.

31. On February 3, 2022, Defendant's COVID Exemption Review Team responded to Plaintiff's February 1, 2022, email with the following rather than offering Plaintiff the opportunity to provide evidence in an actual appeal process, and rather than addressing the issue of invasive vs. non-invasive testing:

> Your request for an exemption to testing was reviewed.
> The decision to require testing will remain in place.
> Exempting unvaccinated employees from regular COVID-
> 19 testing when they work onsite impairs workplace
> safety, creating an undue hardship for the organization.

32. On February 21, 2022, Plaintiff met with Kelly Gramata, Defendant's Administrative Director of Medical and Surgical Subspecialties. Ms. Gramata served Plaintiff with a written warning for failure to submit to weekly invasive testing for the week of February 12, 2022. Plaintiff asked at that time if there was any type of grievance policy/procedure to dispute this action, and Ms. Gramata stated that she was unsure.

33. On February 28, 2022, Plaintiff met with Ms. Gramata again, and was provided with a final warning for failure to submit to weekly invasive testing for the week of February 19, 2022. Plaintiff informed Ms. Gramata at that time that she discovered that there was a policy to allow an employee to request a disciplinary review and that one would be sought.

34. On March 2, 2022, Plaintiff followed the guidelines in the Defendant's Disciplinary Review Policy and sent an email to Disciplinary Review that stated

the following:

> I would like to request a disciplinary review. Would you
> be able to e-mail me the required form that needs to be
> completed for this?
>
> Thank you!

35.     Plaintiff never received a response to her March 2, 2022 request for a disciplinary review.

36.     Plaintiff persevered in her deeply held religious beliefs and remained steadfast in her conviction to neither be injected with an experimental gene therapy agent nor be subjected to a weekly, invasive, experimental and potentially injurious testing procedure. Plaintiff did not contract the SARS-CoV-2 virus or influenza or any other illness during 2020 through the date of this filing.

37.     On March 7, 2022, Defendant terminated Plaintiff's employment for her refusal to renounce God and abandon her deeply held religious beliefs.

38.     Defendant never questioned the sincerity of Plaintiff's religious beliefs in regards to her request for exemption and accommodations for COVID-19 employment related requirements, either verbally or in writing, at any time prior to her termination, even though, upon information and belief, Defendant questioned the sincerity of the religious beliefs of many other employees.

39.     Plaintiff subsequently filed a claim for unemployment compensation benefits with the state of Ohio and presented allegations contained herein as grounds to establish that Defendant terminated Plaintiff's employment without just cause.

40.     Upon information and belief, Defendant is the only entity in the Akron-Canton area employing full-time Genetic Counselors. Plaintiff, who was the primary wage earner for her family, is unable to accept any type of position that would necessitate significant travel due to the responsibilities required of her to care for her severely disabled child. Additionally, the specific training and education of a Genetic Counselor do not readily transfer to other professions. As a result, Plaintiff was forced to accept employment as a general laborer earning only $14.00 per hour with no benefits.

41.     On June 30, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission that states the following:

> I have sincerely held religious beliefs that prevent me from taking the experimental COVID-19 "vaccine" injections and reported these beliefs to my employer, Children's Hospital Medical Center of Akron (CHMCA). CHMCA initially granted my request for a religious exemption from receiving one of the COVID-19 shots as a condition of employment, thereby acknowledging that I have sincere and deeply held religious beliefs in this regard. However, CHMCA refused to offer me an accommodation that was consistent with these same religious beliefs, leading to termination of my employment after 34.5 years of service for failure to adhere to the COVID-19 Related Employment Requirements policy.

> The relevant facts of this case include the following: In anticipation of the experimental PCR test for COVID-19 disease being required by CHMCA as a condition of employment, I asked if a saliva test would be available on August 16, 2021, August 20, 2021, September 25, 2021, and October 26, 2021. On October 22, 2021, I filed a request for a religious exemption from the influenza vaccine. On November 6, 2021, I filed a request for a religious exemption from weekly invasive PCR testing for COVID-19 in lieu of vaccination. (CHMCA's policy at that

time was for unvaccinated employees to undergo at least weekly invasive testing for COVID-19 for an indefinite period of time.) On November 19, 2021, CHMCA communicated a new policy that requires all employees to receive one of the experimental "vaccines" against COVID-19.

On December 1, 2021, CHMCA granted my exemption from the influenza vaccine, and the accommodation was for me to wear a face covering while working through March 31, 2022, even if the requirement for masking related to COVID-19 should be lifted. On December 1, 2021, I requested a religious exemption from the COVID-19 "vaccine". On December 3, 2021, CHMCA granted my request for a religious exemption from the requirement to receive the COVID-19 "vaccine" but required weekly invasive and experimental PCR testing as an accommodation.

After exempting me from receiving the influenza and COVID-19 vaccines, CHMCA acknowledged my sincere and deeply held religious beliefs regarding its COVID-19 testing mandate in its emails dated January 27, 2022, and February 3, 2022, and stated: "Exempting unvaccinated employees from regular COVID-19 testing when they work onsite impairs workplace safety, creating an undue hardship for the organization." On February 1, 2022, I asked if there was an appeal process since CHMCA denied my request for consideration of a religious exemption from weekly invasive and experimental testing for COVID-19 infection or some other accommodation. On February 3, 2022, CHMCA responded by stating, "Your request for an exemption to testing was reviewed. The decision to require testing will remain in place."... (My request that was filed on November 6, 2021, was apparently reviewed at this time rather than offering me the opportunity to present evidence in an actual appeal process.) On March 2, 2022, after receiving my second written warning for "failure to submit to weekly testing to comply with the COVID-19 Related Employment Requirements policy guidelines", I requested a disciplinary review; however, the disciplinary review committee never responded to my inquiry.

On, March 7, 2022, my employment was terminated due to my refusal to submit to the invasive and experimental testing protocol. CHMCA employees who received a COVID-19 "vaccine" are not required to undergo periodic testing for COVID-19 disease even though they can and have contracted and spread the disease. Of interest, at least five of the other eight genetic counselors who were employed by CHMCA at the time, all of whom were "vaccinated", contracted COVID-19 disease in December 2021/January 2022, while I did not.

42.     On November 15, 2022, the state of Ohio determined that Plaintiff "was discharged by the employer without just cause in connections with work" and paid unemployment benefits to Plaintiff.

43.     On April 20, 2023, the Equal Employment Opportunity Commission made the following determination of charge:

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

44.     Upon information and belief, Defendant does not currently require its employees to receive any additional experimental gene therapy injections marketed as vaccines for the SARS-CoV-2 virus and no longer requires weekly testing of its employees who have not been injected with experimental gene therapy agents.

45.     Defendant has not offered to reinstate Plaintiff, or, to the best of Plaintiffs knowledge, any other Christian whom Defendant purged from its institution.

-21-

## FIRST CAUSE OF ACTION

### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### Religious Discrimination-Failure to Accommodate

46.    Plaintiff restates the foregoing paragraphs as if set forth fully herein.

47.    Plaintiff's sincere religious beliefs prevent her from allowing other humans to force medical experimentation and/or intervention upon her body, which is the temple of God.

48.    Plaintiff's sincere religious beliefs prevented her from allowing her body, which is the temple of God, to be defiled with injections of the experimental gene therapy agents required by Defendant as a condition of continued employment, agents which instruct the human body to produce a protein that it was not designed by God to produce and which is known to be harmful.

49.    Plaintiff's sincere religious beliefs prevented her from allowing her body, which is the temple of God, to be defiled with a weekly, unreliable, experimental and potentially injurious invasive medical procedure that Defendant claims can detect the presence of the SARS-CoV-2 virus.

50.    Plaintiff informed Defendant of her beliefs and requested accommodation on religious grounds.

51.    Defendant approved a religious exemption from the influenza vaccine and from being injected with one of the experimental gene therapy agents that Defendant falsely claims prevents contraction and transmission of the SARS-CoV-2 virus.

52.    While both influenza and the SARS-CoV-2 virus are upper

-22-

respiratory infections that transmit and manifest in the exact same way, Defendant offered different accommodations for the religious exemptions for each. The accommodation for not taking the influenza vaccine was for Plaintiff to wear a face covering while working through March 31, 2022, and the accommodation for not taking experimental gene therapy agents was to be subjected to a weekly unreliable, experimental and potentially injurious invasive medical procedure that Defendant claims can detect the presence of the SARS-CoV-2 virus.

53.     Defendant did not require its employees who had been injected with the experimental gene therapy agents to be subjected to periodic testing for the SARS-CoV-2 virus despite many of them contracting and spreading the SARS-CoV-2 virus after receiving the experimental gene therapy injections and despite mounting evidence that those injections do not prevent infection or the spread of infection of the SARS-CoV-2 virus.

54.     Plaintiff never stated that she refused to undergo periodic testing for the SARS-CoV-2 virus as a condition of employment, but rather that her sincere religious beliefs prevented her from undergoing periodic *invasive* testing, and she repeatedly asked if readily available *non-invasive* saliva testing would be made available in lieu of invasive testing. In addition, she indicated her willingness to comply with other alternative accommodations, such as working remotely. However, Defendant failed to engage in an interactive process with Plaintiff regarding her request for religious accommodation.

55.     Defendant finally responded to Plaintiff's attempts at resolution with

the following:

> Regardless of whether the testing requirement actually conflicts with a sincerely held religious belief, to exempt unvaccinated staff members who work onsite from the COVID-19 testing requirement would constitute an undue hardship. Your request is therefore denied.

56.     Defendant's requirement, which was without justification, of a weekly, unreliable, experimental and potentially injurious invasive medical testing procedure as an accommodation was used as coercion to achieve its ultimate goal, i.e., to get Plaintiff to renounce God and to be injected with one of the experimental gene therapy agents for SARS-CoV-2 virus.

57.     Not requiring employees who had been injected with one of the gene therapy agents to undergo periodic testing for the SARS-CoV-2 virus, who could contract and transmit the SARS-CoV-2 virus at least as easily as those who have not been so injected, clearly demonstrates that Defendant's claim that an undue hardship would be incurred by the Defendant if Plaintiff did not undergo periodic testing for the SARS-CoV-2 virus is patently false.

58.     Defendant had an obligation under Title VII to engage in an interactive process and to provide Plaintiff with individualized, reasonable accommodations for her sincerely held religious beliefs. Failure to do so is an unlawful employment practice. See 29 C.F.R. § 1605.2(b)(1).

59.     Defendant had an obligation to adhere to its *COVID-19 Related Employment Requirements Program, version 2,* and to engage in an interactive process with Plaintiff to determine if a reasonable, religiously acceptable

accommodation could be provided for her religious exemption from COVID-19 "vaccination".[2]

60.    Defendant had an obligation under the Nuremberg Code to obtain informed consent before requiring Plaintiff to participate in medical experimentation.

61.    Defendant had an obligation under the Nuremberg Code to not use coercion to obtain consent to participate in medical experimentation.

62.    Defendant had an obligation under 21 U.S.C. § 360 bbb-3(e)(1)(A)(i),(ii)&(III), which codified requirements of the Nuremberg Code, to obtain informed consent before requiring Plaintiff to participate in medical experimentation that had only received emergency use authorization.

63.    Defendant had an obligation under 21 U.S.C. § 360 bbb-3(e)(1)(A)(i),(ii)&(III), which codified requirements of the Nuremberg Code, to not use coercion to obtain consent to participate in medical experimentation that had only received emergency use authorization.

64.    Despite the mandates in the United States Code and the Word of God contained in the Holy Bible, as well as internationally recognized standards of human decency, Defendant illegally demanded, without any legitimate justification, that all of its employees be subjected to dangerous experimental gene therapy agents, created from the cells of aborted human beings, that alter the

---

[2] Defendant's *COVID-19 Related Employment Requirements Program, version 2,* does **not** specify that periodic testing for SARS-CoV-2 virus is the accommodation offered to employees receiving a medical or religious exemption. Rather it states that it would engage in an interactive process to determine reasonable accommodations.

human genetic code created by God, clearly violating the religious beliefs of many Christians, including Plaintiff's sincerely held religious beliefs (which Defendant had officially accepted), and then refused to provide legally mandated accommodations, which effectively purged Akron Children's Hospital of Christians who would not renounce their faith in God!

65. Defendant's refusal to engage in an interactive process and to provide Plaintiff with reasonable accommodations for her sincerely held religious beliefs has harmed and will continue to harm Plaintiff.

66. By failing to engage in the interactive process and failing to offer any reasonable, religiously acceptable accommodations, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

## SECOND CAUSE OF ACTION

### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Retaliation

67. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

68. Plaintiff engaged in protected activity when she requested religious exemptions from Defendant's requirements that she be injected with an influenza vaccine and experimental gene therapy agents for the SARS-CoV-2 virus and when she requested religious exemption from a weekly, unreliable, experimental and potentially injurious invasive medical procedure.

69. The availability of non-invasive testing for the SARS-CoV-2 virus clearly demonstrates that Defendant used the requirement of invasive testing as a weapon to punish Plaintiff for exercising her religious rights.

70.   Not requiring employees who had been injected with one of the aforementioned gene therapy agents, who could contract and transmit the SARS-CoV-2 virus at least as easily as those who have not been so injected, to undergo periodic testing for the SARS-CoV-2 virus, clearly demonstrates that Defendant used the requirement of weekly invasive testing as a weapon to punish Plaintiff for exercising her religious rights.

71.   Defendant had obligation under Title VII to engage in an interactive process and to provide Plaintiff with reasonable accommodations for her sincerely held religious beliefs and to refrain from retaliating against her for requesting religious accommodations.

72.   Defendant had an obligation under the Nuremberg Code to not use coercion to obtain consent to participate in medical experimentation and to not retaliate against Plaintiff for declining to participate in medical experimentation.

73.   Defendant had an obligation under 21 U.S.C. § 360 bbb-3(e)(1)(A)(i),(ii)&(III), which codified requirements of the Nuremberg Code, to not use coercion to obtain consent to participate in medical experimentation that had only received emergency use authorization and to not retaliate against Plaintiff for declining to participate in such medical experimentation.

74.   Despite the mandates in the United States Code and the Word of God contained in the Holy Bible, as well as internationally recognized standards of human decency, Defendant, without any justification, used its power to retaliate against Plaintiff for requesting a legally protected religious exemption and

accommodations from being subjected to dangerous experimental gene therapy agents, created from the cells of aborted human beings, that would alter her genetic material created by God, by requiring a weekly, unreliable, experimental and potentially injurious invasive medical testing procedure as an accommodation, which Defendant knew was a violation of Plaintiff's sincere religious beliefs, and terminating Plaintiff's employment for not accepting this accommodation.

75.    By retaliating against Plaintiff for engaging in protected activity, Defendant intentionally and willfully violated Title VII. This violation harmed and continues to harm Plaintiff.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award her the following relief:

1.    Damages including back pay and front pay (including compensation for lost benefits), pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

2.    Injunctive relief.

3.    Reasonable attorneys' fees and costs.

4.    Any other relief that the Court considers just, proper, and equitable.

Respectfully submitted,

Susan A. Woods
584 North Hawkins Avenue
Akron, Ohio 44313
Phone: 330-869-0815
Email: susanwoods@neo.rr.com

-28-

## **JURY DEMAND**

A trial by jury is demanded for all issues so triable.

Susan A. Woods

July 12, 2023